IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| ABDUL FARID KHAIR, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 1:10-cv-410 |
| | ) |
| COUNTRYWIDE HOME LOANS, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## <u>M E M O R A N D U M   O P I N I O N</u>

This matter is before the Court on Defendants' Brief in Support of Request for Attorneys' Fees ("Mot."). [Dkt. 69.] After granting Plaintiffs a voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2), this Court elected to award reasonable attorneys' fees for Defendants' costs for summary judgment and voluntary dismissal, and directed Defendants to submit a detailed breakdown of fees and hours billed for these tasks. [Dkt. 68.] Defendants submitted their brief on March 3, 2011, seeking a total of $25,708.25. [Dkt. 69.] Plaintiffs submitted a brief in opposition on March 15, 2011 [Dkt. 70 ("Opp.")], and Defendants filed their reply on March 17, 2011. [Dkt. 71 ("Reply")]. For the following reasons, the Court will grant fees in the amount of $20,000.00, to be paid if Plaintiffs bring a new lawsuit against Defendants.

1

## I. Analysis

Federal Rule of Civil Procedure 41(a)(2) provides that once the opposing party has filed a summary judgment motion, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Where the requested dismissal is without prejudice, attorneys' fees are sometimes imposed as a condition of voluntary dismissals, in accordance with Rule 41(a)(2). *See, e.g.*, *Southern Ry. Co. v. Chapman*, 235 F.2d 43 (4th Cir. 1956). Once such a condition is imposed, a plaintiff has the option to timely refuse the voluntary dismissal and to proceed with its case, if in its view the conditions imposed are too onerous. *Cranford v. Morgan Southern Inc.*, 333 F. App'x 852, 855 (5th Cir. 2009).

As a general matter, a party requesting attorneys' fees bears the burden of demonstrating the reasonableness of what it seeks to recover. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994). The product of the reasonable fee and reasonable rate is

referred to as the "lodestar amount." *See Daly v. Hill*, 790 F.2d 1071, 1076 n.2 (4th Cir. 1986).

In determining "what constitutes a 'reasonable' number of hours and rate," a district court's discretion is typically "guided by the following twelve factors" adopted from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). Those *Johnson/Kimbrell* factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Id.* The Court need not address all twelve factors independently, because "such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly

rate." *Freeman v. Potter*, No. 7:04cv276, 2006 WL 2631722, at *2 (W.D. Va. 2006) (citing *Hensley*, 461 U.S. at 434 n.9).[1]

Fee awards are generally within the discretion of the district court and are reviewed for abuse of discretion. *See McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640 (4th Cir. 1998). In the context of a Rule 41(a)(2) voluntary dismissal without prejudice, however, a fee award generally cannot be directly appealed because it is not an involuntary adverse judgment against a party. *See Rogler v. Dept. of Health & Human Servs.*, 289 F. App'x 647, 647 (4th Cir. 2008) (per curiam) ("Rule 41(a) dismissal without prejudice is not appealable."); *Yoffe v. Keller Indus., Inc.*, 580 F.2d 126, 131 (5th Cir. 1978) (finding Rule 41(a) dismissals without prejudice reviewable only where "so outrageous" as to be "patently unreasonable"). It is therefore unclear the extent to which the *Johnson/Kimbrell* analysis applies in the context of a fee award under Rule 41(a)(2). Given this Court's discretion in awarding fees, it

---

[1] Typically, "[a]fter determining the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones . . . . [O]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F.3d at 244 (internal quotations and citations omitted). Because typically the "degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award, the district court 'may simply reduce the award to account for the limited success.'" *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 675 (E.D. Va. 2004) *(*quoting *Hensley*, 461 U.S. at 436-37). Yet this focus on successful versus unsuccessful claims makes little sense in a case like this one, where the Court is awarding fees simply to correct for Defendants' wasted effort in light of a voluntary dismissal under Rule 41(a)(2). This Court will therefore omit this consideration from its analysis.

will still frame its analysis in terms of the *Johnson/Kimbrell* factors in an attempt to fashion a reasonable voluntary dismissal condition.

In support of their request for fees, Defendants submitted billing records for hours related to summary judgment and voluntary dismissal. This Court carefully reviewed Defendants' submission and was mindful of Defendants' duty to exercise billing judgment, paying close attention to identify hours that appear excessive, redundant, and unnecessary. *See Hensley*, 461 U.S. at 437 ("The applicant should exercise 'billing judgment' with respect to hours worked."). With these considerations in mind, the Court turns to the *Johnson/Kimbrell* factors.

A. <u>First Factor: Time and Labor Expended</u>

The first *Johnson/Kimbrell* factor relates to the time and labor required in the case. Defendants' two lead counsel, Gary Tepper and Constantinos Panagopoulos, charged their clients hourly rates of $575.00 and $450.00, respectively, before a 15% discount was applied to all bills. (Mot. at 1.) They broke down their fees and hours by task, as reproduced below:

5

| Task | Attorney | Hours Billed | Total Charged (including 15% discount) |
|---|---|---|---|
| Outline Summary Judgment Motion | GT | .4 | $310.25 |
| | CP | .3 | |
| Drafting Summary Judgment Motion | GT | 31 | $15,533.75 |
| | CP | 1 | |
| Reply Memorandum | GT | .4 | $769.25 |
| | CP | 1.5 | |
| Opposition to Motion to File Summary Judgment Response | GT | 7.8 | $4,462.50 |
| | CP | 1.7 | |
| Hearing | GT | 1.6 | $954.13 |
| | CP | .7 | |
| Response to Motion for Voluntary Dismissal | GT | 3.3 | $1,689.37 |
| | CP | 3.7 | |
| Preparation for Hearings | GT | 0 | $1,989.00 |
| | CP | 5.2 | |
| TOTAL | | | $25,708.25 |

Plaintiffs raise several objections to these fee amounts. First, Plaintiffs claim that they include "back-billed" hours for Mr. Panagopoulos that were not billed in Defendants' original brief regarding attorneys' fees. The answer to this seems simple; the original brief only included fees through February 17, 2011, and not those billed March 10, 2011. Mr. Panagopoulos's fees appear to fall within the newly billed period, (Mot. Ex. A at 10-12), and therefore are not back-billed.

Second, Plaintiffs take issue with $4,462.50 charged in preparing a reply to Plaintiffs' supplemental opposition to summary judgment, an argument that was ultimately mooted by this Court's denial of leave to Plaintiffs' to file that supplemental

6

brief. Plaintiffs challenge the awarding of fees "for preparing a *substantive* reply to a supplemental opposition the Court never granted the plaintiffs leave to file." (Opp. at 8.) But as Plaintiffs surely recall, their (substantial) supplemental opposition brief was filed on February 7, 2011, only three days before this Court's scheduled summary judgment hearing. Especially given the time-frame involved, Defendants had no idea whether this Court would permit the filing of that opposition or not, and, more importantly, how much time they would have to reply if the Court granted leave. It was reasonable for Defendants to include a substantive opposition in their brief just in case.

As to Plaintiffs' contention that this amount should not be awarded because Defendants' substantive research and drafting work may be useful against any future claims on Plaintiffs' new theory of the case, it has some merit. Of course, however, this is not a reason for striking all $4,462.50 charged for this brief, as the brief was also directed towards opposing leave. Thus, this Court will deduct 50% from this amount, leaving $2231.25 in fees for 3.4 hours of Mr. Tepper's time and 0.85 hours of Mr. Panagopoulos's time.

Regarding time billed for the voluntary dismissal, Plaintiffs raise several additional objections. First, Plaintiffs claim that Defendants brought some of the costs in

this case on themselves, including those from voluntary dismissal, by removing the case to federal court. And second, Plaintiffs argue that because Rule 41 dismissals are generally not denied absent substantial prejudice, Defendants should have known that their opposition to voluntary dismissal probably would not succeed, making their opposing it an exercise of poor judgment. The Court disagrees both with the premise that Defendants ought to be penalized for exercising their right of removal and with the notion that Defendants should not have bothered fighting a last-second maneuver to prevent impending summary judgment. Neither of these actions exhibited remotely questionable judgment.

Moreover, Plaintiffs' concern that defendants generally will always fight voluntary dismissal knowing that plaintiffs will eventually fund their efforts through fee awards is well-taken, but not persuasive, as courts do not automatically award fees for voluntary dismissals; they award fees at their discretion in only some cases.

Finally, Plaintiffs argue that in one instance, Defendants engaged in duplication of effort, regarding Messrs. Tepper and Panagopoulos both attending this Court's February 8, 2011 telephone hearing. This is a surprising argument, given that both of Plaintiffs' counsel attended that phone call and that the call was precipitated by Plaintiffs' motion to file a

8

supplementary brief in opposition. Considering the circumstances surrounding that call, it was not only reasonable but wise for both of Defendants' lead counsel to attend.

Thus, having carefully reviewed the itemized billing record submitted in support of Defendant's motion, the Court finds that the time entries do not appear excessive, redundant, or unnecessary and that no further reduction is required under this factor.

    B. <u>Second, Third, and Ninth Factors: Novelty and Difficulty of the Questions Raised, Skill Required to Properly Perform the Legal Service Rendered, and Experience, Reputation, and Ability of the Attorney</u>

The Court finds that the issues raised during summary judgment and voluntary dismissal were not so complex or novel as to require a unique skill set. That said, counsel operated on a particularly accelerated time schedule--even for this Court--in briefing these issues. Plaintiffs take issue with Mr. Tepper serving as the primary drafter for Defendants' summary judgment motion, arguing that some or all of the motion could have been performed by less-experienced and less-costly counsel. That may be true, but this Court finds that Mr. Tepper's service as primary drafter was not unreasonable. The 31 hours he took drafting a substantial summary judgment motion was a reasonable amount of time given its length and importance to the disposition of the case and given his apparently extensive

background representing mortgage lenders in cases like this one. (*See* Reply at 4.) Perhaps less-experienced counsel could have achieved similar results, but it is reasonable to believe that it would have taken less-experienced counsel more time to draft the motion, and that Mr. Tepper would still have spent substantial time revising their work product.

Overall, counsel demonstrated the proper experiences, skills, and legal acumen required to successfully present this case. This factor therefore presents no reason for a reduction.

C. Fourth Factor: Attorneys' Opportunity Costs in Pressing the Instant Litigation

The parties do not appear to contest this factor, and it therefore will not affect the Court's determination.

D. Fifth Factor: Customary Fee for Like Work

Defendants provided sworn statements from their lead counsel, Messrs. Tepper and Panagopoulos, who bill at rates of $575.00 and $450.00, respectively, before applying a 15% discount in this case. (Mot. at 1.) Plaintiffs do not dispute the accuracy of these figures, but instead argue that Defendants failed to meet their burden to prove their reasonableness. In the context of Rule 41(a)(2), that burden is unclear.

The parties have not presented, and this Court has not located, any case law guidance for determining "reasonable" fees in a Rule 41(a)(2) context. That context differs significantly

from the typical situation where attorneys' fees are awarded--
one where a prevailing party seeks reimbursement for its
successful efforts.  Whereas a fee award to a prevailing party
imposes an *involuntary* sanction as part of the ultimate judgment
in a case, a fee award under Rule 41(a)(2) is a *voluntary*
condition that may be rejected by the plaintiff.  Because a
conditional fee award is less severe than a mandatory one, a
conditional fee award proponent may face a less stringent burden
of proof for reasonableness, depending on the circumstances.
This Court thus begins its analysis with the typical framework
for fee awards to prevailing parties, but keeps this distinction
in mind.

Determining the reasonableness of rates is typically a
"fact-intensive [task] and is best guided by what attorneys earn
from paying clients for similar services in similar
circumstances."  *Rum Creek Coal Sales, Inc.*, 31 F.3d at 175
(*citing Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  As
stated earlier, the burden of proving reasonableness of fees
typically falls on the prevailing party, which can establish the
market rate "through affidavits reciting the precise fees that
counsel with similar qualifications have received in comparable
cases; information concerning recent fee awards by courts in
comparable cases; and specific evidence of counsel's actual
billing practice or other evidence of the actual rates which

counsel can command in the market." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987) (citations omitted).

Here, Mr. Panagopoulos's affidavit provides no comparison of his rates to the market, and Mr. Tepper's affidavit has only a token statement along those lines, referring to the "Laffey Matrix"[2] in claiming that his fees are "lower than what is customarily paid." (Dkt. 67-1, Ex. A ¶ 5.) "[M]erely relying upon an attorney's own affidavit is [typically] insufficient to establish an acceptable market rate for attorneys' fees under this factor." *U.S., ex rel. Ubl v. IIF Data Solutions*, No. 1:06cv641, 2010 WL 1726767, at *8 (E.D. Va. April 28, 2010).

Recent decisions of this Court have looked to three indices in considering attorney-fee reasonableness. In *IIF Data Solutions*, this Court reviewed two versions of the "Laffey Matrix," one published by the United States Attorney's Office for the District of Columbia[3] and one known as the "Adjusted Laffey Matrix," as well as a table of fees outlined in *Grissom*

---

[2] The Laffey Matrix is used as a guideline for reasonable attorney fees in the Washington/Baltimore area. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. E. Sign Tech, LLC*, 2006 U.S. Dist. LEXIS 72345, at *7 (E.D. Va., Oct. 4, 2006) (using the *Laffey* matrix as evidence of reasonableness). The matrix is hosted on the website of the United States Attorney's Office for the District of Columbia. *See* http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html. The rates are adjusted for cost of living and are based on rates found reasonable in *Laffey v. Nw. Airlines*, 746 F.2d 4, 24-25 (D.C. Cir. 1985), *overruled in part on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988).
[3] The Court will refer to this matrix as the "Unadjusted Laffey Matrix."

12

*v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008), which it dubbed the "Grissom Table." *IIF Data Solutions,* 2010 WL 1726767, at *8-9. "[T]he Laffey matrix is a useful starting point to determine fees, not a required referent." *Newport News Shipbuilding and Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 n.11 (4th Cir. 2009). The two Laffey matrices are set forth below:

| Unadjusted Laffey Matrix | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| *Year* | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 |
| *Experience* | *Fees* | | | | | | | |
| 20+ years | $380 | $390 | $405 | $425 | $440 | $465 | $465 | $475 |
| 11-19 years | $335 | $345 | $360 | $375 | $390 | $410 | $410 | $420 |
| 8-10 years | $270 | $280 | $290 | $305 | $315 | $330 | $330 | $335 |
| 4-7 years | $220 | $225 | $235 | $245 | $255 | $270 | $270 | $275 |
| 1-3 years | $180 | $185 | $195 | $205 | $215 | $225 | $225 | $230 |
| Paralegals & Law Clerks | $105 | $110 | $115 | $120 | $125 | $130 | $130 | $135 |

| Adjusted Laffey Matrix | | | | | | |
|---|---|---|---|---|---|---|
| | *Experience* | | | | | |
| | Paralegal/Law Clerk | 1 to 3 Years | 4 to 7 Years | 8-10 Years | 11 -19 Years | 20 + Years |
| *Year* | *Fees* | | | | | |
| 6/01/10-5/31/11 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09-5/31/10 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08-5/31/09 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | $130 | $239 | $293 | $423 | $476 | $574 |

13

The Fourth Circuit, in *Grissom*, looked to the Unadjusted Laffey Matrix in evaluating fees in the Northern Virginia area and, while recognizing its use as a starting point in evaluating fees, adjusted the applicable market rates as indicated in the table provided below. *Grissom*, 549 F.3d at 323.

| Grissom Table | | |
|---|---|---|
| *Title* | *Years Experience* | *Hourly Rate* |
| Partner | 18-19+ | $335.00-380.00 |
| Associate | 6-7 | $250.00 |
| Associate | 5-6 | $250.00 |
| Associate | 2-3 | $200.00 |
| Associate | 1 | $180.00 |

*See IIF Data Solutions*, 2010 WL 1726767, at *9.

In *Grissom*, after achieving a judgment in its favor for $130,000.00, the plaintiff moved for $325,000.00 in attorneys' fees, which this Court granted as reasonable. In attempting to establish the reasonableness of its sought fees, plaintiff (1) submitted attorney billing records and affidavits of his lead counsel and junior members of his legal team comparing their fees with others at their firm, (2) pointed to fee awards by courts in other discrimination cases, and (3) filed a copy of the unadjusted Laffey Matrix for the time period June 1, 2003 through May 1, 2004. 549 F.3d at 322.

The Fourth Circuit found this filing insufficient to justify the rates sought. It noted the absence of any affidavits from attorneys outside the plaintiff's counsel's law

14

firm, as well as the plaintiff's failure to submit evidence supporting the Unadjusted Laffey Matrix as reasonable, or that it should be applied to counsel's law firm, which was based in Reston, Virginia, not Washington, DC. *Id.* at 323. And the Court was unconvinced by the other fee awards submitted by the plaintiff. *Id.* Because of the plaintiff's failure of proof, the Fourth Circuit imposed the above fee structure.

*Grissom* and *IIF Data Solutions* provide a useful benchmark for the present case. And in comparison with *Grissom*, Defense Counsel here fall below the level of proof the Fourth Circuit found *in*sufficient to prove reasonableness. They rely almost entirely on the Laffey Matrix as reasonable, and they introduce no additional evidence that their own rates are reasonable or that the Laffey Matrix itself is reasonable.

Yet, as explained earlier, it is unclear whether proponents of Rule 42(a)(1) fee awards are bound by such stringent standards of proof. It strikes the Court that under some circumstances, as here, where the fees sought are fairly insubstantial, strict adherence to *Grissom* may undermine a key purpose of a Rule 42(a)(1) fee award--the desire to mitigate waste. This Court explained in its March 8, 2011 Order that "what should be compensated here is the defendant's wasted time and effort." [Dkt. 68 at 5.] The Court keeps that objective in mind in noting that the cost of assembling briefing and

supporting materials regarding attorneys' fees fulsome enough to pass muster in *Grissom* might well approach or exceed the $25,708.25 Defendants are seeking in fees.[4] That does not mean that Defendants bear no burden with regard to proving reasonableness. But it does suggest that that burden should be tempered by the Court's discretion and objective of creating the most equitable voluntary-dismissal condition.

With respect to Mr. Tepper, Defendants seek fees of $488.75 per hour ($575.00 discounted by 15%). Mr. Tepper has specialized in defending mortgage lenders for more than 25 years. (Dkt. 67-1, Ex. A ¶ 3.) According to the Unadjusted Laffey Matrix, the hourly rate for an attorney with 20+ years of experience is $475.00, while the Adjusted Laffey Matrix puts that figure at $709.00. The Grissom Table, however, puts the rate for an attorney with 19+ years experience at $380.00, below Defendants' request. For purposes of this case only, this Court finds that a fee of $400.00 per hour is appropriate for Mr. Tepper.

As for Mr. Panagopoulos, he seeks hourly fees of $382.50. His 20 years of experience places him at $475.00 on the Unadjusted Laffey Matrix, $709.00 on the Adjusted Laffey

---

[4] The Court notes again here that Defendants' summary judgment motion in this case apparently cost $15,533.75 to assemble and draft.

Matrix, and $380.00 on the Grissom Table.[5]  In light of these amounts, Mr. Panagopoulos's rate of $382.50 is appropriate and will be awarded in full.

> E. <u>Sixth Factor and Seventh Factors: Attorney's Expectations at the Outset of the Litigation and Time Limitations Imposed by the Client or Circumstances</u>

The Court need not consider the sixth and seventh *Johnson* factors, because neither party addresses them.  And, as stated before, briefing regarding summary judgment and voluntary dismissal took place under extreme time constraints.  Thus, these factors do not counsel in favor of a reduction.

> F. <u>Eighth Factor: Amount in Controversy and the Results Obtained</u>

Neither party appears to address this factor, and indeed it appears inapplicable to a dismissal under Rule 41(a)(2).  This Court therefore need not consider this factor.

> G. <u>Factors Ten, Eleven, and Twelve: Undesirability of the Case, Nature and Length of the Professional Relationship Between Attorney and Client, and Attorneys' Fees Awards in Similar Cases</u>

Neither party presented any evidence concerning these three *Johnson/Kimbrell* factors.  Thus, the Court need not and does not consider these factors in its analysis.

*   *   *

---

[5] The Court takes notice that Mr. Panagopoulos's professional biography states that he graduated George Washington University Law School in 1991. Biography of Constantinos G. Panagopoulos at Ballard Spahr LLP, http://www.ballardspahr.com/people/attorneys/panagopoulos_constantinos.aspx (last visited March 23, 2011).

Thus, the following table summarizes the hours billed, which the Court has found reasonable, and the reasonable rates as addressed above.

| Name | Hours | Reasonable Rate | Total |
|---|---|---|---|
| Mr. Tepper | 41.1 | $400.00 | $16,440.00 |
| Mr. Panagopoulos | 9.75 | $382.50 | $3,729.38 |
| Lodestar | | | $20,169.38 |

The Court will therefore award attorneys' fees in the amount of $20,169.38.

## II. Conclusion

For these reasons, the Court will grant--as a condition of voluntary dismissal--fees in the amount of $20,169.38, to be paid if Plaintiffs bring a new lawsuit against Defendants.

An appropriate Order will issue.

April 1, 2011  _____/s/_____
Alexandria, Virginia  James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE